UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAHMEAN JACKSON, : | |
|     Plaintiff, : | |
| : | |
| v. : | No. 5:23-cv-2622 |
| : | |
| ZEP MANUFACTURING; : | |
| ZEP, INC.; and EXPRESS : | |
| EMPLOYMENT PROFESSIONALS, : | |
|     Defendants. : | |

**O P I N I O N**
Express's Motion to Compel Arbitration, ECF No. 5 – Granted
Zep's Motion to Compel Arbitration, ECF No. 14 – Granted

**Joseph F. Leeson, Jr.**                                                                       **March 19, 2024**
**United States District Judge**

**I.    INTRODUCTION**

Plaintiff Jahmean Jackson initiated the above-captioned action against his former employers alleging race discrimination. Both employers, Defendant Zep, Inc. and Defendant Express Employment Professionals, move to compel arbitration based on an arbitration agreement between Jackson and Express. Jackson opposes the motions, challenging the validity and enforceability of the agreement. For the reasons set forth below, both Motions to Compel Arbitration are granted and the matter is stayed pending arbitration.

**II.    BACKGROUND**

According to the Complaint, Jackson was employed with Zep through Express. *See* Compl. ¶¶ 18-25. Zep and Express are alleged to be joint employers, but Zep is alleged to control every aspect of Jackson's employment. *See id.* Jackson alleges that during the course of his employment, Zep's employees and supervisors subjected him to physical and verbal

harassment on account of his race, culminating in his termination. *Id.* ¶¶ 26-89. Jackson asserts claims against Zep and Express for discrimination in violation of 42 U.S.C. § 1981 and for hostile work environment, disparate treatment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § 2000e *et seq.*[1]

Express filed a Motion to Compel Arbitration, which was joined in by Zep, asserting that as a condition of his employment, Jackson agreed to submit any and all disputes arising from his employment to arbitration. *See* Express Mot., ECF No. 5; Zep Mot., ECF No. 14. Attached to the Motion is the Mutual Arbitration Agreement ("Agreement"). *See* Agreement, Ex. B, ECF No. 5-2. The Agreement provides in pertinent part:

> The undersigned individual [Jackson] and Express Services, Inc. dba Express Employment Professionals (the "Company") voluntarily and knowingly enter into this mutual arbitration agreement ("Agreement").
> 1. . . . both the Company and Individual . . . agree all legal disputes and claims between them shall be determined exclusively by final and binding arbitration before a single, neutral arbitrator as described in this Agreement. Except as provided below, claims subject to this Agreement include without limitation all claims pertaining to Individual's employment or other relationship with the Company (including application for or termination of employment or other relationship) and all claims for discrimination, harassment, or retaliation; . . . and violation of any federal, state, or local law, statute, regulation, or ordinance. . . . Claims against the Company subject to this Agreement shall include claims against the Company's parents, subsidiaries, affiliates, divisions, brands, alleged agents, and alleged joint or co-employers. . . .
> . . .
> 6. Except as noted in the following paragraph, the arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the formation, enforceability, applicability, or interpretation of this Agreement, including without limitation any claim that it is void or voidable. Thus, except as noted in the following paragraph, the parties voluntarily waive the right to have a court determine the enforceability of this Agreement.

---

[1] Jackson stated that he could add claims under the Pennsylvania Human Relations Act ("PHRA") after August 2, 2023, but has made no attempt to do so.

Agreement ¶¶ 1, 6.[2]  The Agreement contains an opt-out provision, which states:

> Individual may opt out of this Agreement by delivering, within 30 days of the date this Agreement is provided to Individual, written notice of Individual's desire to opt out of this Agreement to the Company's Legal Department at Express Services, Inc, 9701 Boardwalk Boulevard, Oklahoma City, Oklahoma 73162. If Individual does not deliver such notice within 30 days, and if Individual accepts or continues employment or other association after that date, he or she shall be deemed to have accepted the terms of this Agreement, regardless of the space below for Individual's signature and regardless of whether Individual or a Company representative signs this Agreement.

*Id.* ¶ 10.  Jackson did not opt out of the Agreement.  *See* Homsey[3] Dec. ¶¶ 1, 4 (attesting, after reviewing Express's corporate records, that Jackson did not give notice to opt-out of the agreement to arbitrate).  The Agreement is dated February 15, 2022, and electronically signed by Jackson.[4]  *See* Agreement; Homsey Dec. ¶ 3.

Also electronically signed by Jackson is the E-Signature Disclosures and Consent form, which provides, in pertinent part:

> By checking the box and clicking the "Accept" button (all below), you are agreeing that your electronic signature is the equivalent of your handwritten (or wet) signature, with all the same legal and binding effect. In certain cases throughout your employment, you may be asked to click buttons labeled "Accept," "I Agree," "I Acknowledge," or using similar words, or otherwise electronically to acknowledge, accept, review, etc. Materials. These E-Signature Disclosures and Consent apply to those instances as well.
> . . .
> By checking this box, I understand that I am:
> . . .
> 3. Agreeing to electronically access, receive, review, sign, and authenticate Materials related in any way to my employment with Express, in place of hard copy/paper documents and handwritten signatures.
> . . .

---

[2]  *See also* Agreement ¶ 5 ("To the maximum extent permitted by law and except as noted herein, the arbitrator selected by the parties shall administer the arbitration according to the Employment Arbitration Rules (or successor rules) of the American Arbitration Association ('AAA'). . . .").

[3]  Harvey H.H. Homsey is Express's Vice President Franchise Systems.  His declaration is attached to Express's Motion to Compel Arbitration.  *See* Homsey Dec., Ex. A, ECF No. 5-2.

[4]  Homsey electronically signed the Agreement on behalf of Express.  *See* Agreement.

      6.   Agreeing that I have read, understand, and agree to all statements, agreements, and acknowledgements in these E-Signature Disclosures and Consent.

E-Sign. Consent, Ex. 1, ECF No. 5-2. The form includes a partial list of materials to which the electronic signature applies. *See id.* (". . . you are agreeing to electronically access, receive, review, sign, and authenticate certain documents, forms, and/or letters . . . including but not limited to . . ."). The list does not specifically reference the Agreement, but does list "Any other employment-related documents." *See id.* The E-Signature Disclosures and Consent form, as well as all onboarding documents, were completed by Jackson on February 15, 2022, the day he interviewed with Express and received an offer of employment. *See* Homsey Supp. Dec. ¶ 16b, ECF No. 12-1. The documents were completed via the "Workforce" section of Express's proprietary software Q4. *Id.* ¶ 5. Jackson accessed this software through a link Express emailed to Jackson's personal email account. *Id.* ¶ 16b.

      When new associates are hired by Express, they go through a digital onboarding process through Workforce. *Id.* ¶ 6. The new associate must first set up a Workforce account, which requires the associate to: (1) input his/her first and last name into the portal and (2) create a unique username and password that is only known to him/her. *Id.* ¶ 7. Once the account is set up, the new associate is presented with various onboarding documents to complete. *Id.* ¶ 8. If the associate does not complete this process, he/she cannot be placed on assignment. *Id.* The first document to be completed is the E-Signature Disclosures and Consent form. The associate must click on a check box stating "I understand" and then a box stating "I accept." *Id.* ¶ 10. The associate must electronically sign this form before the associate can continue in the digital onboarding process. *Id.* ¶ 10. One of the next forms is the Background Check Authorization, which requires the associate to input personal information such as social security number and drivers' license number. *Id.* ¶ 11. Also included in the onboarding documents is the Mutual

Arbitration Agreement. *Id.* ¶ 12. For this document, the associate must click the box marked "Accept" under "Signature" at the bottom of the page. *Id.* The associate is then reminded that by checking the box marked "Signature" the associate is electronically signing the document. *Id.* A record of the date and time each document is completed is maintained by Workforce. *Id.* ¶ 9.

Workforce records show that Jackson signed the E-Signature Disclosures and Consent form on February 15, 2022, at 09:40:41. *See* Homsey Supp. Dec. ¶ 19 (showing a screenshot of the timestamp when Jackson completed his onboarding documents electronically). Forty seconds later, at 09:41:21, Jackson completed the Mutual Arbitration Agreement. *See id.* At 09:51:25, Jackson completed the Background Check Authorization and by 10:02:47, all forms were complete. *Id.*

These timestamp records were included in Express's Reply, prior to the filing of which, Jackson filed his Response to Express's Motion to Compel. *See* Resp. Express Mot., ECF No. 9. In his Response, Jackson asserts that there is little to no proof dating the electronic records or that he signed the Agreement. *See id.* 2. He further argues that the Agreement should not be enforced because the E-Signature Disclosures and Consent form does not specifically list the Agreement as among those to which the form applies. *See id.* Attached to the Response is Jackson's declaration stating that he "was never provided with any arbitration agreement" during the onboarding process. *See* Jackson Dec. ¶ 3, ECF No. 9-1. He further declares that he has "no recollection of ever signing an arbitration agreement with Express." *Id.* ¶ 4.

In addition to these arguments made in response to Express's Motion to Compel, Jackson further contends that Zep was not a party to the Agreement, nor is Zep named in the Agreement. *See* Resp. Express Mot. 2-4. *See also* Resp. Zep Mot., ECF No. 19. Jackson asserts that Zep should be estopped from taking advantage of a contract to which he was not a party. *See id.*

### III. STANDARDS OF REVIEW

#### A. Motion to Compel Arbitration – Federal Arbitration Act

"It is well established that the Federal Arbitration Act (FAA), reflects a strong federal policy in favor of the resolution of disputes through arbitration." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (internal quotations omitted). "[T]he Supreme Court has steadily advanced this policy by guarding against unwarranted judicial interference with arbitration." *MXM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 397 (3d Cir. 2020) (citing cases).

"Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 522 (3d Cir. 2009). "Under the Act, arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). To determine whether there was a valid arbitration agreement, the court applies state-law principles of contract formation. *See Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599-600 (3d Cir. 2020). Under Pennsylvania law, the court considers: "(1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration." *Atacs Corp. v. Trans World Communs.*, 155 F.3d 659, 666 (3d Cir. 1998). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "A party opposing a motion to compel arbitration bears the burden of proving the arbitration clause unenforceable." *Antkowiak v. Taxmasters*, 455 F.

App'x 156, 159 (3d Cir. 2011) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000)). "All reasonable inferences from the evidence are to be granted to the party opposing arbitration." *Antkowiak*, 455 F. App'x at 159.

The "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc.*, 561 U.S. at 68-70 ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."). Nevertheless, "courts retain the primary power to decide questions of whether the parties mutually assented to a contract containing or incorporating a delegation provision." *MXM Constr. Co.*, 974 F.3d at 402. "The court must resolve those questions even when the answer requires passing judgment on the formation or existence of the contract; otherwise, arbitrators would be allowed 'to determine their own jurisdiction, something that is not permitted in the federal jurisprudence of arbitration[.]'" *Id.* at 397-98 (quoting *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 111 (3d Cir. 2000)). The "FAA affirmatively requires the court to be 'satisfied' that the arbitration agreement's existence is not at issue." *Sandvik*, 220 F.3d at 109 (citing 9 U.S.C. § 4). The "courts ask (1) if there is a valid agreement between the parties to delegate questions of arbitrability, and (2) whether the parties 'clearly and unmistakably' intended to delegate arbitrability questions." *Scott v. CVS*, No. 22-3314, 2023 U.S. App. LEXIS 11900, at *3 (3d Cir. May 15, 2023) (citing *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 142-44 (3d Cir. 2022)). "A party contesting the enforceability of a delegation clause must 'challenge[] the delegation provision specifically.'" *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226 (3d Cir. 2018) (quoting *Rent-A-Center, W., Inc.*, 561 U.S. at 70). "To do so, the party must

at least reference the provision in its opposition to a motion to compel arbitration." *Id.* "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc.*, 139 S. Ct. at 529 (explaining that the court must refer the matter to an arbitrator even if it thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless because the FAA "contains no 'wholly groundless' exception, and [the court] may not engraft our own exceptions onto the statutory text).

In deciding whether to compel arbitration, a district may either employ the motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) or the motion for summary judgment standard under Federal Rule of Civil Procedure 56. *See MacDonald v. Unisys Corp.*, 951 F. Supp. 2d 729, 732 (E.D. Pa. 2013). If arbitrability is not apparent on the face of the complaint or if the non-moving party has "come forth with reliable evidence that is more than a naked assertion ... that it did not intend to be bound by the arbitration agreement, . . . the issue should be judged under the Rule 56 standard." *Guidotti v. Legal Helpers Debt Resolution L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotations omitted). The summary judgment standard is also applied if the parties rely on factual evidence outside the pleadings in arguing that arbitration is or is not appropriate. *See Smeck v. Comcast Cable Communs. Mgmt., LLC*, No. 19-cv-3625-JMY, 2020 U.S. Dist. LEXIS 221526, at *8 (E.D. Pa. Nov. 25, 2020).

   **B.**  **Motion for Summary Judgment - Review of Applicable Law**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.* at 257.  The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.  The court must consider the evidence in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## IV.   ANALYSIS

### A.   Express's request to compel arbitration is granted.

Initially, the Court finds there was a valid agreement to arbitrate between Express and Jackson.  Jackson's electronic signature is sufficient to indicate his intent[5] to be bound by the

---

[5]   Jackson's failure to read the terms of the Agreement, *see* Jackson Dec. ¶ 5 ("I never read the terms of any arbitration agreement during my employment with Express."), does not negate this intent because a "contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission."  *Upton v. Tribilcock*, 91 U.S. 45, 50 (1875).  "Indeed, if all it took to avoid a signed contract was to claim ignorance of its content or legal effect, 'contracts would not be worth the paper on which they are written.'"  *MXM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 403 (3d Cir. 2020) (quoting *id.*).  "It is the law in Pennsylvania that failure to read a contract is not an excuse and does not nullify a contract."  *Martinez v. Skirmish, U.S.A., Inc.*, No. 07-5003, 2009 U.S. Dist. LEXIS

Agreement. *See Dicent v. Kaplan Univ.*, 758 F. App'x 311, 313 (3d Cir. 2019) ("Pennsylvania, as most jurisdictions, recognizes the e-signature as a valid means to register legal assent."). Although Jackson declares that he has "no recollection of ever signing an arbitration agreement with Express," *see* Jackson Dec. ¶ 4,[6] "courts within the Third Circuit have generally found that an electronic signature is binding even where the signer does not remember electronically signing the document," *Martin v. Liberty Mut. Ins. Co.*, No. 21-4360, 2023 U.S. Dist. LEXIS 47169, at *12-13 (E.D. Pa. Mar. 20, 2023) (citing cases).

Jackson's declaration is insufficient to create a factual dispute as to whether he electronically signed the Agreement in light of the evidence regarding Workforce. *See Martin*, 2023 U.S. Dist. LEXIS 47169, at *12-13 (concluding that the one plaintiff's deposition testimony that she did not sign or does not remember electronically signing the form in question did not create a genuine dispute of fact as to the validity of the agreement that would refute the defendant's evidence of, *inter alia*, the forms showing electronic signatures and the time stamps showing when the plaintiffs viewed and electronically signed the forms); *Boehm-Scharff v. Rue21, Inc.*, No. 2:23-cv-227-NR, 2023 U.S. Dist. LEXIS 193892, at *2, *17 n.6 (W.D. Pa. Oct. 30, 2023) (concluding that the plaintiff's testimony that she could not remember much of her onboarding process and equivocal denials about ever signing the arbitration agreement were not enough to create a genuine dispute of material fact as to the formation of the agreement in light of the digital paper trail the defendant offered to support its version of events). Express has presented evidence that new associates, which Jackson was, must complete their onboarding

---

51628, at *14 (E.D. Pa. June 15, 2009) (citing *Standard Venetian Blind Co. v. Amer. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)).

[6] Notably, Jackson declares having "no recollection of ever signing an arbitration agreement with Express," but specifically denies having ever signed an arbitration agreement with Zep. *Cf* Jackson Dec. ¶ 4, *with id.* ¶ 11.

documents using Workforce and of the safeguards preventing just anyone from accessing the documents. Specifically, using a link sent to Jackson's personal email, Jackson accessed Workforce and had to first create a Workforce account with a unique username and password known only to him. Only after logging into his account, could Jackson access the onboarding documents, including the Agreement. *See Gomez v. Rent-A-Center, Inc.*, No. 2:18-cv-1528-KM-SCM, 2018 U.S. Dist. LEXIS 114910, at *9 (D.N.J. July 10, 2018) (concluding that the plaintiff failed to create a dispute that the arbitration agreement was electronically signed by anyone else because the defendant submitted uncontradicted evidence that ample safeguards were in place to prevent just anyone from signing the agreement, such as the need for the plaintiff to set up and use a unique electronic signature password known only to her). Although Jackson may not recall signing the Agreement, the date and time he signed the Agreement and completed each document was recorded by Workforce. *See Boehm-Scharff*, 2023 U.S. Dist. LEXIS 193892, at *2, *17 n.6 (compelling arbitration because the plaintiff's testimony that she could not remember much of her onboarding process and equivocal denials about ever signing the arbitration agreement were insufficient to create a genuine dispute of material fact as to the formation of that agreement in light of the digital paper trail offered by the defendants to support its version of events). In light of the time stamps and in the absence of any evidence disputing the accuracy of the Workforce records, Jackson has failed to present a factual dispute that he electronically signed the Agreement. *See Juric v. Dick's Sporting Goods, Inc.*, No. 2:20-CV-00651-MJH, 2020 U.S. Dist. LEXIS 137299, at *10, 24-25 (W.D. Pa. Aug. 3, 2020) (finding that the plaintiffs' assertion that they do not remember executing the arbitration agreements did not create a factual dispute rebutting the defendant's onboarding process and/or the accuracy of its record keeping methods); 73 Pa. S.A. § 2260.305(a) ("An electronic record or electronic signature is attributable

<span>

to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.").

Moreover, even if he had not signed the Agreement, Jackson's continued employment with Express for at least four months[7] constitutes acceptance of the Agreement. *See Wetzel v. Baldwin Hardware Corp.*, No. 98-3257, 1999 U.S. Dist. LEXIS 1227, at *10 (E.D. Pa. Jan. 29, 1999) (determining that the plaintiff's continued employment with the defendant constituted his acceptance of the arbitration agreement even though he did not sign or verbally assent to the agreement). Jackson contends that he did not receive "a copy" of the Agreement, but the E-Signature Disclosures and Consent form advised him how to obtain paper copies of any electronic materials. Despite Jackson's argument that the E-Signature Disclosures and Consent form does not list the Agreement,[8] he never claims to not have reviewed and signed that form. Both that form and the Agreement were among the onboarding documents that Jackson had to complete before he could be placed on assignment. In light of his subsequent assignment and the time stamp records showing that he completed the onboarding process, there is no genuine issue of material fact that Jackson received notice of the Agreement, regardless of whether or not he was provided with a physical copy of the same. *See Hoffman v. Compassus*, No. 18-0776, 2019 U.S. Dist. LEXIS 69017, at *21 (E.D. Pa. Apr. 23, 2019) (concluding that the plaintiff was put on notice of the arbitration agreement when it was sent to her Workday Inbox and, by failing to

---

[7] *See* Compl. ¶¶ 8, 14

[8] Jackson argues that the Agreement should not be enforced because it is not listed in the E-Signature Disclosures and Consent form. However, the form includes only a partial list of materials to which the electronic signature applies, "including but not limited to . . . other employment-related documents." *See* E-Sign. Consent.

opt-out and by continuing her employment with the defendant, she accepted the terms of the agreement).

Furthermore, the terms of the Agreements are sufficiently definite to be enforced. *See Soroko v. ATMOS, Inc.*, No. 11-6120, 2015 U.S. Dist. LEXIS 127317, at *16 (E.D. Pa. Sep. 23, 2015) (finding that the terms of the arbitration agreement were sufficiently definite to be enforced because, *inter alia*, there was a certain basis for a court to provide a remedy under the arbitration provisions). There was also consideration for the Agreements. *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002) ("When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced."). Accordingly, there was a valid agreement to arbitrate between Express and Jackson. *See Juric*, 2020 U.S. Dist. LEXIS 137299, at *27-28 ("In circumstances such as this one, where plaintiffs denied agreeing to arbitration but electronic records proved otherwise, courts have rejected those challenges as a basis to deny contract formation."). Consequently, there was a valid agreement to arbitrate.

There is no dispute that the claims at issue in the above-captioned action fall within the scope of the Agreement.[9] Jackson's Motion to Compel Arbitration is therefore granted.

### B. Zep's request to compel arbitration is granted.

This Court has concluded that Jackson entered into a valid arbitration agreement. In that Agreement, Jackson agreed that "the arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the formation, enforceability,

---

[9] Regardless, Jackson and Express agreed that "the arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the . . . applicability . . . of this Agreement. . . ." Agreement ¶ 6. For the reasons discussed in the next section, this delegation clause is clear and unmistakable evidence of the parties' intent to delegate threshold arbitrability issues.

applicability, or interpretation of this Agreement . . . . [T]he parties voluntarily waive the right to have a court determine the enforceability of this Agreement." Agreement ¶ 6. This language is clear and unmistakable. *See Mack v. Progressive Corp.*, No. 23-2430, 2024 U.S. Dist. LEXIS 45459, at *10-11 (E.D. Pa. Mar. 13, 2024) (finding that the delegation clause, stating that the parties agree the "Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement. . .," is clear an unmistakable). Furthermore, the Agreement specifically references the AAA rules. *See* Agreement ¶ 5 ("To the maximum extent permitted by law and except as noted herein, the arbitrator selected by the parties shall administer the arbitration according to the Employment Arbitration Rules (or successor rules) of the American Arbitration Association ('AAA'). . . ."). This is additional evidence of the clear and unmistakable intent to delegate arbitrability issues to the arbitrator. *See Blueprint Capital Advisors, LLC v. N.J. Div. of Inv.*, No. 23-1116, 2023 U.S. App. LEXIS 34032, at *6 (3d Cir. Dec. 22, 2023) (concluding that there was a valid arbitration agreement and "that the parties' incorporation of the rules of the American Arbitration Association ('AAA') in the arbitration agreement constitutes 'clear and unmistakable' evidence of their agreement to delegate arbitrability questions to an arbitrator). Moreover, Jackson does not contest the delegation clause specifically. *See Rent-A-Center, W., Inc.*, 561 U.S. at 73 (holding that unless the party challenges the delegation provision specifically, the court must treat it as valid); *MacDonald*, 883 F.3d at 226-27 ("contesting the validity of an arbitration agreement as a whole, without specifically disputing the delegation clause contained therein, is not sufficient to challenge the delegation provision").

14
031824

The question of whether Zep, as a non-signatory, can enforce the Agreement is an issue pertaining to the "enforceability, applicability, or interpretation of this Agreement" and must be resolved by the arbitrator.  *See Henry Schein, Inc.*, 139 S. Ct. at 529 (holding that when a "contract delegates the arbitrability question to an arbitrator, a court . . . possesses no power to decide the arbitrability issue"); *Altenhofen v. Energy Transfer Partners, LP.*, No. 20-200, 2020 U.S. Dist. LEXIS 234143, at *3 (W.D. Pa. Dec. 14, 2020) (holding that whether the non-signatory defendant can enforce the arbitration agreement is a question reserved for arbitration); *Robertson v. Enbridge (U.S.) Inc.*, No. 19-1080, 2020 U.S. Dist. LEXIS 137375, at *9 (W.D. Pa. July 31, 2020) (recommending that the motion to compel arbitration filed by a non-signatory to an arbitration agreement be granted because the question of whether a non-signatory can enforce the agreement is an issue pertaining to the "interpretation, applicability, [or] enforceability" of the Arbitration Agreements between the plaintiff-employee and the employer), *adopted by* 2020 U.S. Dist. LEXIS 175780, at *2 (W.D. Pa. Sep. 24, 2020).  Zep's Motion to Compel Arbitration is therefore granted so that the arbitrator may initially determine whether the Agreement may be enforced against Zep.

      **C.**     **The action is stayed pending arbitration.**

Section 3 of the FAA requires that a court stay an action pending arbitration when a party has requested a stay.  *See Kauffman v. U-Haul Int'l, Inc.*, No. 5:16-cv-04580, 2018 U.S. Dist. LEXIS 145717, at *32-33 (E.D. Pa. Aug. 27, 2018).  Accordingly, because Express and Zep have requested a stay, the above-captioned action must be stayed pending resolution of arbitration.

## V. CONCLUSION

Jackson electronically entered into an arbitration agreement with Express that contains a delegation clause sending all gateway arbitrability issues to an arbitrator. The motions to compel arbitration by Express and by Zep are therefore granted and the action is stayed pending resolution of the arbitration proceedings.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge
